IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| vs. | : | |
| | : | |
| RICARDO MCKENDRICK, SR. | : | |
| and | : | |
| RICARDO MCKENDRICK, JR. | : | NO.  08-207 |

Pratter, J.                                                                                              August  8 , 2008

**MEMORANDUM AND ORDER**

**INTRODUCTION**

Ricardo McKendrick, Sr. and his son, Ricardo McKendrick, Jr., are charged with conspiracy to distribute approximately 274 kilograms of cocaine.  The substance of the charges against them emanate, in part, from the cocaine, along with a loaded firearm, equipment for making kilogram "bricks" of cocaine, drug packaging materials and United States currency seized on April 2, 2008 by law enforcement personnel from a row home they shared at 2606 Federal Street pursuant to a search warrant (warrant number 132548) issued by a bail commissioner of the Philadelphia Municipal Court.[1]

Messrs. McKendrick move to suppress the fruits of the search of 2606 Federal Street,

---

[1] Both McKendricks are charged in Count I with the conspiracy and in Count II with possession with intent to distribute the cocaine. Mr. McKendrick, Sr. is also charged in the third Count with possession of a firearm in furtherance of a drug trafficking crime.  Warrants were also granted to search the premises at 2604 Federal Street and Ricardo McKendrick, Jr.'s Ford 500.  No evidence was seized at 2604 Federal Street and that warrant is not challenged. With respect to the seizure of evidence from the car or subsequent to the stop of the car and the attendant arrest of Mr. McKendrick, Jr., the defense has reserved the right to challenge that seizure at a later time.  (Hr'g Tr. 18-19, July 15, 2008.)  However, the Court's ruling here has equal application to the probable cause supporting issuance of the warrant to search the car.

attacking the efficacy of the probable cause affidavit pursuant to which the search warrant was issued.[2] Following oral argument, and after closely reviewing the probable cause affidavit at issue and carefully considering the written and oral submissions of counsel for the McKendricks and for the Government, the Court concludes that the suppression motion should be denied.

**FACTUAL BACKGROUND**

According to the probable cause affidavit prepared by Philadelphia Police Detective Reginald Graham,[3] a confidential informant, who was a "reliable source" of fellow Detective Andrew Callaghan, informed the police that "Lil Rick" McKendrick, a major drug trafficker and close associate of drug trafficker John Nixon, was storing large quantities of cocaine at 2606 Federal Street, a location where major drug dealers come to pick up or purchase large amounts of cocaine. The confidential informant also reported that Mr. McKendrick, Jr. was expecting a large shipment to the stash location on March 31 and April 1, 2008. The source also told Det. Callaghan that Mr. McKendrick, Jr. drives a gray mini-van and black Ford 500 to transport the cocaine. According to the same reliable source Mr. Nixon drove a gray Land Rover with Delaware plates.

---

[2]Mr. McKendrick, Sr. initially also argued for suppression of the evidence seized from 2606 Federal Street on the grounds that the officers violated the "knock and announce" rule. During the July 15, 2008 oral argument on the suppression motion, counsel confirmed that the defense has abandoned this argument. (Hr'g Tr. 4-5, July 15, 2008.)

[3]According to his affidavit, Det. Graham has been a police officer for approximately 13 years and has served in the Narcotics Field Unit for approximately seven years. In the course of participating in more than 1000 narcotics arrests, Det. Graham has undertaken surveillances, undercover purchases and search and seizure warrant applications. He has received specialized narcotics investigations training which, together with his field work, has made him familiar with drug trafficking activities and materials, including working with informants, cooperators and confidential sources to further understand and recognize illegal drug activities.

Armed with this information, as recounted in the affidavit, Det. Callaghan commenced surveillance at 2606 Federal Street from mid-afternoon through early evening on March 31, during which he observed approximately a half dozen unknown black males go "in and out of 2606 Federal Street," and also saw Mr. Nixon arrive in the Land Rover, go into the residence, and come out accompanied by another unknown black male. The two men walked down the block for a brief discussion before Mr. Nixon returned to the Land Rover and the other man returned to the row house. Within a short time Mr. Nixon had a rendezvous with a white male.

Surveillance by the two officers resumed the next day at 5:30 p.m. The officers saw the black Ford 500 and the grey mini-van parked near the 2606 Federal Street location. Ricardo McKendrick, Jr. was seen inside the black Ford, counting money which he handed to his black male passenger. Mr. McKendrick, Jr. soon thereafter got out of the Ford and met with another man who arrived in the 2600 block of Federal Street in a white Honda Accord that had been seen by Det. Callaghan during the surveillance on the prior day. Mr. McKendrick, Jr. and the man from the Accord went to the row house, with Mr. McKendrick, Jr. using keys to enter the residence. Meanwhile, Det. Callaghan observed Mr. Nixon nearby conversing with several men. The officers then documented the coming and going of Mr. McKendrick, Jr. in the black Ford, the man in the Accord and others, including Mr. Nixon, driving to and from the row house and nearby locations for brief conversations, all within a short time frame. At one point, Mr. McKendrick, Jr. was seen opening the trunk of the Ford, removing a black plastic bag, "dump[ing] the contents . . . and exit[ing] 2606 Federal Street with keys." The police continued to observe and document frequent traffic in and out of the row house by several men, including Mr. McKendrick, Jr. culminating in Mr. McKendrick, Jr. driving away from the house in the

3

black Ford, followed by two police officers who saw him pick up a passenger.  After a brief drive followed by the police Mr. McKendrick, Jr. pulled over to let the passenger out who then fled.  Mr. McKendrick, Jr. "took off at a high rate of speed" and was subsequently stopped by police and the K-9 unit was notified.  The K-9 alerted to both of the front doors and the trunk of the black Ford.  Meanwhile, continued in-and-out traffic was observed by the surveillance officers at 2606 Federal Street.

By the end of the first day's surveillance, the officers had confirmed through a criminal history check that Mr. McKendrick, Jr. had previously been convicted of assault crimes and related firearms offenses and that his voter registration confirms residence at 2606 Federal Street.  A criminal history check for Mr. Nixon displayed a narcotics arrest along with a firearm arrest.

Detective Graham summarized the proffered probable cause as having been drawn from the confidential informant and from Detective Callaghan, as also corroborated by Det. Graham himself and the two days' worth of surveillance, including the further conduct of Mr. McKendrick, Jr. and his companion in fleeing when followed by the police and the results of the K-9 alerting at the car.  Detective Graham stated that, based upon his experience, he had reason to believe that narcotics were being stored at 2606 Federal Street (and in the black Ford) and that search warrants were promptly needed in order to avoid having Mr. McKendrick, Jr.'s associates destroy or relocate any narcotics being stored at 2606 Federal Street.  The bail commissioner issued the requested search warrants which are at the heart of the pending suppression motion.

**DISCUSSION**

Both McKendricks seek to suppress the evidence seized from 2606 Federal Street.  They contend that the "four corners" of the affidavit presented to the bail commissioner was too

anemic on its face to justify the issuance of the search warrants.

Defendants acknowledge, as they must, that the Court may not engage in a de novo review of the bail commissioner's determination that probable cause was presented. United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000). Indeed, the Court is constrained to approach the decision to issue the search warrants with "great deference" for purposes only to ensure that the issuing authority "had a substantial basis for concluding that probable cause existed." United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993); see also Illinois v. Gates, 462 U.S. 213, 236 (1983); Spinelli v. United States, 393 U.S. 410, 419 (1969); United States v. Kepner, 843 F.2d 755, 762 (3d Cir. 1988).

The Third Circuit Court of Appeals has even embraced a more indulgent standard by describing the "substantial basis" standard as requiring the reviewing court to "determine only whether the affidavit provides a sufficient basis for the decision the [issuing authority] actually made." United States v. Jones, 994 F.2d 1051, 1057 (3d Cir. 1993). When in doubt, according to the Supreme Court, the reviewing court should resolve the issue "largely" by acknowledging "the preference to be accorded to warrants." Gates, 462 U.S. at 237 n.10 (citation omitted). Moreover, the Court is obliged to consider the "totality of the circumstances," including the affiant's training and experience, the information recounted and the practicality of the common sense decision made by the issuing authority as to whether there was a "fair probability that contraband or evidence of a crime [would] be found in a particular place." Id.

Here, the affiant who presented the warrant application possessed the extensive pertinent expertise that would allow the bail commissioner to credit the detectives' opinions that evidence of drug trafficking likely would be found at 2606 Federal Street. See Whitner, 219 F.3d at 299.

5

The affiant attested to receiving specific information supplied by a reliable confidential informant who detailed a precise location, a narrow time frame and specific people (as well as related vehicles) for significant drug trafficking activity.  Subsequent law enforcement surveillance documented conduct entirely consistent with the "where, when and who" information provided by the informant, thus permitting both the officers and then the bail commissioners greater confidence in the source's information as to "what" was occurring at and around the observed location.  Defense counsel emphasize that surveillance officers did not actually see any unambiguously illegal conduct.  However, it was not necessary that the facts recounted in the probable cause affidavit constitute direct proof of a crime; it can be sufficient for purposes of finding probable cause to infer probable cause by "considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence]."  Jones, 994 F.2d at 1056 (quoting United States v. Jackson, 756 F.2d 703, 705 (9th Cir. 1985)); see also United States v. Williams, 124 F.3d 411, 420 (3d Cir. 1997).

  The Court agrees that the Government has correctly recounted the sufficiency of the indicia of accuracy of the information supplied by a confidential source about this specific situation, (see Gov't. Br. at 14), all of which supplements the experienced law enforcement officer's description of the source as "reliable."  See also Alabama v. White, 496 U.S. 325, 331 (1990); United States v. Nelson, 284 F.3d 472, 483 (3d Cir. 2002).  Given that the source was known rather than anonymous, known to be reliable and validated by two days' worth of close surveillance, documenting the lively traffic in, out and around 2606 Federal Street, the presence of a known drug dealer (Nixon), furtive conduct by Mr. McKendrick, Jr. and a companion while

6

followed by police, and the positive K-9 alert, the Court concludes that the issuance of the search warrants in this case meets the Gates test.[4] See also Draper v. United States, 358 U.S. 307, 313 (1959). The accumulated information that is presented in Det. Graham's affidavit provided the bail commissioner with a sufficient considered basis to reasonably and rationally accept the officer's experienced belief that evidence of illegal drug activities likely would be found at the 2606 Federal Street premises and in the black Ford. See United States v. Burton, 288 F.3d 91, 103 (3d Cir. 2002); United States v. Hodge, 246 F.3d 301, 307 (3d Cir. 2001); Whitner, 219 F. 3d at 297-98.[5]

**CONCLUSION**

For the foregoing reasons, the evidence seized from 2606 Federal Street will not be suppressed from use at trial in this case. An appropriate Order accompanies this Memorandum.

BY THE COURT:

/s/ Gene E.K. Pratter
Gene E.K. Pratter
*United States District Judge*

---

[4] The Court also concludes that this case presents sufficient specific differences to distinguish it from United States v. Stearn, 548 F. Supp. 2d 182 (E.D. Pa. 2008), so that, contrary to the zealous advocacy of the defense, Stearn provides no compelling or persuasive example here.

[5] The Government also argues in the alternative that even if the Graham probable cause affidavit was deficient, the fruits of the search at 2606 Federal Street should not be suppressed on the strength of the "good faith" exception to the exclusionary rule enunciated by the Supreme Court in United States v. Leon, 468 U.S. 897 (1984). Even if the Court had not concluded that this warrant was properly issued, the record here contains no factual or advocated basis on which to "objectively ascertain" that the law enforcement officers who served this search warrant would have or could have - - or even should have - - "known that the search [of 2606 Federal Street] was illegal despite the [bail commissioner's] authorization." Leon's "good faith" exception to the exclusionary rule would be available as a basis on which to deny the McKendricks' suppression motion.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL ACTION |
| | : | |
| vs. | : | |
| | : | |
| **RICARDO MCKENDRICK, SR.** | : | |
| and | : | |
| **RICARDO MCKENDRICK, JR.** | : | NO.  08-207 |

**O R D E R**

**AND NOW**, this   8th   day of August, 2008, upon consideration of Defendant McKendrick, Sr.'s Motion To Suppress Physical Evidence (Doc. No. 28), Defendant McKendrick, Jr.'s Motion To Suppress Physical Evidence (Doc. No. 21), Defendant McKendrick, Jr.'s Supporting brief (Doc. No. 50), and the Government's omnibus opposition (Doc. No. 56), and after oral argument, **IT IS HEREBY ORDERED** that the Motions (Doc. Nos. 21 and 28) are **DENIED** for the reasons set forth in the accompanying Memorandum.

BY THE COURT:

  /s/ Gene E.K. Pratter
Gene E.K. Pratter
*United States District Judge*